UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CATHERINE DUFFY, ET AL.                                              PLAINTIFFS

v.                                                          No. 3:24-cv-388-BJB

MAZDA MOTOR OF AMERICA, INC.                                         DEFENDANT

\* \* \* \* \*

OPINION & ORDER PRELIMINARILY APPROVING SETTLEMENT CLASS &
AUTHORIZING NOTICE

Catherine Duffy, Matthew Edlin, Lawrence Mulcahy, and Paula Hall are current and former owners or lessees of Mazda vehicles equipped with the "Mazda Connect Infotainment System." After their Infotainment Systems allegedly didn't work as Mazda advertised them, the Plaintiffs sued Mazda for breaches of express warranty and the implied warranty of merchantability, fraud, unjust enrichment, and violations of California and Kentucky consumer-protection laws. And they seek to represent a putative nationwide class of similarly situated Mazda drivers. Complaint (DN 1) ¶¶ 53–85, 91–99. After nearly two years of negotiation, litigation (in California state court and here), and mediation, the Plaintiffs filed an unopposed motion for preliminary approval of a class-action settlement with Mazda. DN 18.

The question before the Court is whether to preliminarily certify the class and approve the classwide settlement. Preliminary approval would appoint class counsel, authorize them to give notice to the putative class members, provide affected persons a chance to object, and set a final fairness hearing. See FED. R. CIV. P. 23, Advisory Committee Notes to 2018 Amendments. At that hearing, this Court would decide whether final approval is warranted after considering any objections and the requirements of the Federal Rules and due process. If ultimately approved, this settlement would bind all members of the class.

Preliminary approval requires two showings under the Federal Rules of Civil Procedure: the settlement is likely fair under Rule 23(e)(2) and the class is likely permissible under Rule 23(a) and (b). Because the Plaintiffs' motion for preliminary approval establishes both, the Court will grant the motion and authorize notice as described below.

**I. FED. R. CIV. P. 23(e)**. The claims of "a class proposed to be certified for purposes of settlement" may be settled "only with the court's approval." FED. R. CIV. P. 23(e). The parties must "provide the court with information sufficient to enable it

1

to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e)(1)(A). This requires a judge reviewing the parties' submissions to answer two questions. First, whether "the court will likely be able to approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1)(B)(i). Second, whether the court will "likely be able" to "certify the class for purposes of judgment on the proposal" under Rules 23(a) and (b). FED. R. CIV. P. 23(e)(1)(B)(ii). If yes to both, the district court must "direct notice" of the proposal to "all class members who would be bound" by it. FED. R. CIV. P. 23(e)(1)(B).

**A. FED. R. CIV. P. 23(e)(2).** A district court may approve a settlement proposal "only after a hearing" and "only on finding that it is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The question at the preliminary-approval stage is "simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020) (citing NEWBERG ON CLASS ACTIONS § 13:10 (5th ed.)). Preliminary approval may establish "an initial presumption of fairness," but "does not inexorably result in final approval." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 603 (3d Cir. 2010) (Smith, J., dissenting) (quotation marks omitted).

When deciding whether to preliminarily approve a classwide settlement, courts in this circuit consider two sets of factors—one articulated in 2018 in FED. R. CIV. P. 23(e)(2)(A)–(D) and another similar set, known as the *UAW* factors, as described in *International Union, United Auto., Aerospace, & Agricultural Implement Workers of America v. General Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ("UAW"). *See, e.g.*, *Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019).[1] The "burden of proving the fairness of the settlement is on the proponents." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 719 (6th Cir. 2013) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed.)).

Largely for the reasons set forth in the Plaintiffs' submission (DN 18) and elaborated during a telephonic hearing (*see* DN 38), the Court "will likely be able to approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1)(B)(i). The

---

[1] The Rules Advisory Committee amended Rule 23(e) in 2018 to specify the factors relevant to evaluating a proposed classwide settlement. The Committee noted that "each circuit has developed its own" list of factors to consider in approving class action settlements; the amendment, it noted, was not intended to "displace any factor," but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* FED. R. CIV. P. 23 (Advisory Committee Notes to the 2018 Amendments). Courts within this circuit asking whether a classwide settlement is "fair, reasonable, and adequate" under Rule 23(e) have accordingly interpreted the revised Rule 23(e)(2) to complement, rather than supplant, the factors previously articulated in Sixth Circuit precedent. *See, e.g.*, *In re Family Dollar Stores Inc.*, 2023 WL 7112838 (W. D. Tenn. Oct. 27, 2023).

settlement appears fair enough under both the Rule 23(e) and *UAW* factors to warrant notice to the class and proceed to a final fairness hearing.

**1. Rule 23(e) factors.** Rule 23(e) permits courts to approve class-action settlements only if they satisfy four conditions: adequate representation by class representatives and counsel, arm's-length negotiation, adequate relief under the circumstances, and equitable treatment of class members relative to each other. *See* FED. R. CIV. P. 23(e)(2)(A)–(D).

The record supports a finding that the putative class has been adequately represented in arm's-length negotiation. Plaintiffs' counsel—attorneys with decades of experience in class-action litigation—handled the matter on a contingency basis for over two years, including four mediation sessions. Memorandum in Support of Motion for Preliminary Approval (DN 18-6) at 13; Johns Declaration (DN 18-2) ¶¶ 2, 14; Ferich Declaration (DN 18-3) ¶¶ 2, 13, 38. Courts presume a settlement resulting from "extensive negotiations by experienced counsel" is fair. *In re Inter-Op Hip Prosthesis Liability Litigation*, 204 F.R.D. 330, 351 (N.D. Ohio 2001).

The settlement agreement also appears to provide adequate relief to class members. The agreement automatically extends the limited warranty on all class vehicles and creates a speedy and straightforward process to fully reimburse up to $1,750 of out-of-pocket expenses that class members incurred related to Mazda Connect system defects. Settlement Agreement (DN 18-1) at 12–14, 18.

The final factor—equitable treatment of class members—will merit more consideration at the final fairness hearing. The Settlement Agreement grants a $4,000 service award to Duffy and $2,500 each to Edlin, Mulcahy, and Hall. *Id.* at 22. The Sixth Circuit has held that a settlement agreement may, in some circumstances, be inequitable if it "'gives preferential treatment to the named plaintiffs." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)). More recently, the Sixth Circuit warned that "we should be most dubious of incentive payments when they make the class representatives whole, or … even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." *In re Dry Max Pampers Litigation*, 724 F.3d at 722. Under that rejected settlement, the class representatives received a service award of $1000 per child, while absent class members received no monetary relief. *Id.* at 716. Here, Duffy would receive four times that amount, though absent class members should at least receive something: up to $1,750 for reimbursement of out-of-pocket expenses for covered updates, repairs, and replacements. And the initial request for preliminary approval explains that some or all of Duffy's proposed service award compensates her for time devoted to having her vehicle inspected for this litigation—not simply her recovery as a Mazda owner. Memorandum in Support at 10.

3

Despite general suspicion of service awards,[2] this particular settlement still appears to fall "within the range of possible approval," which is all that is required at this preliminary stage. *In re High-Tech Employee Antitrust Litigation*, No. 11-cv-2509, 2014 WL 3917126, at *3 (N.D. Cal. Aug, 8, 2014) (quotation marks omitted). But given the caselaw and considerations noted above, these issues may deserve consideration before or during the final fairness hearing.

**2. *UAW* factors.** The Sixth Circuit requires courts to consider seven related factors: the (1) risk of fraud or collusion; (2) complexity, expense and likely duration of the litigation, (3) amount of discovery engaged in by the parties; (4) likelihood of success on the merits; (5) opinions of class counsel and class representatives; (6) reaction of absent class members; and (7) public interest. *Déjà Vu*, 925 F.3d at 894–95.

*First*, absent evidence of fraud or collusion, the Court may presume none exists. *See Dick v. Sprint Communications Co.*, 297 F.R.D. 283, 295 (W.D. Ky. 2014). No evidence exists to suggest fraud or collusion. Here, the parties reached their agreement after four mediation sessions over the course of a year with a well-respected mediator. Memorandum in Support at 13. Such negotiation with an independent mediator's involvement "virtually insures" no collusion between the parties. *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008).

*Second*, further motions practice presents a "significant ris[k]" to the success of the class action. The Plaintiffs would have to "withstand Mazda's motion to dismiss, obtain class certification, likely defend a certification order on appeal," then win at summary judgment and again at trial. Memorandum in Support at 14. Each stage would subject the class to "continued fees and costs." *Dick*, 297 F.R.D. at 295. Even if the class won at trial, appeals would further "delay meaningful relief." *Id.* Settlement avoids these risks and delays.

*Third*, the parties have engaged in reasonably substantial (if not overly extensive) investigation of the claims and enough discovery to ensure that they are "well informed and have sufficient information" to reach a settlement that is "fair, reasonable, and adequate." Settlement Agreement at 32. In total, Plaintiffs' counsel reviewed nearly 800 pages of informative documents, "11 large Excel spreadsheets," and information from "numerous informal data requests." *Id.*

*Fourth*, the Court is in a relatively poor position to assess the likelihood of success on the merits because the parties have not argued many of the outstanding issues in this case. The Plaintiffs concede that they face significant risks on the merits, "including with respect to class certification, due in part to the availability of

---

[2] *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020) (holding that incentive awards to compensate class representatives for their time and reward them for bringing a lawsuit are unlawful); *but see Scott v. Dart*, 99 F.4th 1076, 1083 (7th Cir. 2024) (holding that "even modest services justify an incentive award").

years-old evidence." Memorandum in Support at 16–17. In light of those risks, the settlement agreement provides the class a reasonable tradeoff: extended warranties and capped reimbursements in exchange for not pursuing more. They get to "control the resolution of this dispute through negotiation today rather than litigation tomorrow." *UAW*, 497 F.3d at 632.

*Fifth*, class counsel and the named plaintiffs representing the class both support the settlement. *See* Memorandum in Support at 17; *Green v. Platinum Restaurants Mid-America LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022) (support of counsel and class representatives weighs in favor of settlement approval).

The *sixth* factor—reaction of absent class members—does not weigh for or against the settlement at this stage. No objectors have surfaced, though that is perhaps to be expected given the lack of notice to date.[3] The final approval hearing will be the more appropriate time to consider this factor.

*Seventh*, and finally, approving the settlement under Rule 23(e) would align with the pro-settlement policy followed by the Sixth Circuit and other courts, *Deja Vu*, 925 F.3d at 899, and would further familiar interests in judicial economy, speedy recovery, and harmony between erstwhile adversaries.

Because several of the *UAW* factors weigh in favor of approval and none weigh against, the Court "will likely be able to approve the proposal under Rule 23(e)(2)."

**B. FED. R. CIV. P. 23(a) and (b)**. "To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation[.]" *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532, 537 (6th Cir. 2012). Additionally, under Rule 23(b)(3), the Court must find that "questions common to the class predominate over questions affecting only individual members," and that a class action is a superior way to resolve the controversy. *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008) (citing FED. R. CIV. P. 23(b)(3)).

The named Plaintiffs propose to define the putative class to include:

> All residents of the continental United States, Hawaii, Alaska, and all United States territories who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, Hawaii, Alaska, or any United States territory.

---

[3] "Any class member may object to the proposal if it requires court approval …." FED. R. CIV. P. 23(e)(5)(A). Class members "who claim the mantle of 'objector' usually do so in the context of opposing the terms of a proposed settlement," though they may object at any time "prior to a settlement's [final] approval." *In re Nat'l Prescription Opiate Litigation*, 976 F.3d 664, 699, 700 n.38 (6th Cir. 2019) (Moore, J. dissenting).

Settlement Agreement at 10. A party seeking certification "must affirmatively demonstrate … compliance" with Rule 23 by "prov[ing] that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).

Nearly 1.7 million putative settlement-class vehicles are covered by the proposed class. Memorandum in Support at 5. So numerosity is almost certainly satisfied. So too is superiority. The parties have spent two years litigating this case, and only a modest amount of recovery appears available even here—to say nothing of what they'd potentially receive should they sue individually. *See Vassalle*, 708 F.3d at 758 (class members' "limited resources" and "meager monetary relief," along with "this case [being] far more procedurally advanced than … other actions bringing similar claims[,]" "weigh[s] in favor of finding the superiority factor was satisfied"). And "a district court need not inquire whether the case, if tried, would present intractable management problems" in the class-settlement context. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

The class representatives, like the other Mazda buyers and lessees they purport to represent, bought or leased Mazda vehicles with the allegedly faulty Mazda Connect system. Compared to the claims of the rest of the class, the representatives' claims appear to arise from the same conduct by Mazda and the same kinds of contracts. Thus, they satisfy Rule 23's requirements that a named plaintiff's claims truly represent those of the class, *see Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007), and that "questions of law or fact common to class members predominate over any questions affecting only individual members." *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850–51 (6th Cir. 2013) (quoting FED. R. CIV. P. 23(b)). And because they satisfy the predominance requirement, they satisfy commonality, as well. *See* 7 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 23:19 (6th ed.) ("[M]ost courts continue to use Rule 23(b)(3)'s predominance prong as the true test of whether or not the class's claims are sufficiently cohesive to warrant aggregate litigation.").

That leaves adequacy.

The class representative "must have common interests with unnamed members of the class" and must "vigorously prosecute the interests of the class through qualified counsel." *Vassalle*, 708 F.3d at 757. Class representatives are typically adequate if they are "part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626 (quotation marks omitted). Here, Duffy and the other representatives claim to have suffered the same injury as the class members—problems with the faulty Mazda Connect system. Because they "must act through class counsel," whether they provide adequate representation "turns in part on the competency of class counsel and in part on the absence of conflicts of interest." *Id.* at 626 (internal quotation marks omitted). The Court addressed class counsel's competency above.

Conflicts of interest under Rule 23(a) typically arise from differences between the representative and other class members regarding how to litigate the claim—such as the type of relief sought or the application of specific legal theories that may benefit one claimant and harm another. *See* 1 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 3:58 (6th ed.). These conflicts center on litigation strategy and the relief requested. Incentive awards, by contrast, present a different issue: they act as a "bounty," *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1258 (11th Cir. 2020), motivating representatives to settle regardless of their similarities to other class members. These awards separate class representatives from absent class members by the extra incentives they're promised, not according to differences in their underlying claims. Although courts address this under different aspects of Rule 23,[4] under these circumstances at least the question is better addressed under subsection (e), which asks whether a settlement (including any incentive awards) treats all class members equitably.

**II. Notice.** One other potential issue may merit attention at or before the final fairness hearing: the Settlement Agreement imposes more onerous requirements on putative class members to opt out or object than to receive notice of the settlement. Under the Agreement, class members may submit claims through a website or by mail. Settlement Administrator Declaration (DN 18-4) ¶ 30 (providing an alternative for class members "who prefer to submit a claim form by mail"). But those wishing to object (without counsel) or opt out must send snail mail to the Claims Administrator. Proposed Notice (DN 18-1, Exhibit C) ¶¶ 18, 21.

Why would an online form work for some but not all purposes? Needless to say, Americans use email for all manner of legal and business dealings in 2024—now three decades out from the launch of AOL and the founding of Prodigy. Perhaps good reasons exist for this delay and asymmetry. But none is apparent from the face of the settlement and court filings. At least one other district court has rejected a similarly skewed proposed settlement: "requiring … class members to opt out by mailing a hard copy letter … serves little purpose but to burden those who wish to opt out. In a world where [the Defendants] can … administer settlement claims electronically … [Defendants] can assuredly process opt outs electronically." *Arena v. Intuit, Inc.*, No. 19-cv-2546, 2021 WL 834253, at *10 (N.D. Cal. March 5, 2021) (denying preliminary approval of classwide settlement).

---

[4] *See, e.g., Vassalle*, 708 F.3d at 756 (Rule 23(e)); *Dry Max*, 724 F.3d at 722 (Rule 23(a)); *Dick*, 297 F.R.D. at 301 (freestanding section).

**ORDER**

1. Unless otherwise defined, all terms that are capitalized shall have the meanings ascribed to those terms in the Settlement Agreement.

2. The Court finds on a preliminary basis under Rule 23 of the Federal Rules of Civil Procedure that the settlement ("Settlement") memorialized in the "Settlement Agreement" is fair, reasonable, and adequate.

3. The Court has considered the pleadings and arguments made by Plaintiffs in support of the motion for preliminary approval and finds that the proposed Settlement Class described in the Settlement Agreement is proper and should be provisionally certified for settlement purposes. Solely for the purposes of the proposed Settlement, the following Settlement Class is hereby provisionally certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

   > All residents of the continental United States, Hawaii, Alaska, and all United States territories who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, Hawaii, Alaska, or any United States territory.

4. Solely for the purposes of the proposed Settlement, the Court finds that: (1) the Settlement Class is so numerous (nearly 1.7 settlement class vehicles) that joinder is impracticable; (2) questions of law and fact are common to the Settlement Class; (3) the claims of the Class Representatives are typical of the claims of the Settlement Class; and (4) the Class Representatives will fairly and adequately protect the interests of the Settlement Class. Further, for purposes of settlement only, the Court finds that the proposed Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Court finds that certification of the Settlement Class for settlement purposes is the best means of protecting the interests of all of the Class Members.

5. Solely for the purposes of the proposed Settlement, the Court preliminarily approves Benjamin F. Johns of Shub & Johns LLC and Andrew W. Ferich of Ahdoot & Wolfson P.C.to be appointed as Class Counsel. The Court also hereby preliminarily approves Duffy, Edlin, Mulcahy, and Hall as the Class Representatives.

6. Per the request of the Parties, the Court appoints JND Legal Administration LLC as the Claims Administrator.

7. The Court approves the form and content of the proposed Claim Form and Notice of Class Action Settlement, subject to any amendments the parties wish to make given § II above. The Court finds that the procedures for notifying the Settlement Class about the Settlement as described in the Settlement

Agreement provide the best notice practicable under the circumstances and therefore meet the requirements of the United States Constitution and specifically its Due Process Clause, Rule 23 of the Federal Rules of Civil Procedure, and any other applicable laws and rules mentioned in the parties' filings. The Court therefore directs distribution of the Notice Packet to Class Members as set forth in the Settlement Agreement.

8. The Court authorizes the Settlement Administrator to request, obtain and utilize vehicle registration information from the Department of Motor Vehicles for all 50 states, the District of Columbia, Puerto Rico, Guam, the U.S. Virgin Islands, and all other United States territories and/or possessions for the purposes of providing the identity of and contact information for purchasers and lessees of Class Vehicles. Vehicle registration information includes, but is not limited to, owner/lessee name and address information, registration date, year, make and model of the vehicle.

9. In compliance with the Attorney General notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, the Settlement Administrator, at Mazda's expense, shall provide notice of this proposed Settlement to the Attorney General of the United States, and the Attorneys General of each state in which a known Settlement Class Member resides. The Settlement Administrator shall also provide contemporaneous notice to the Parties.

10. The Settlement Administrator is directed to maintain all personally identifiable information of the Settlement Class Members securely and confidentially and to use the Settlement Class Members' information solely for purposes of effectuating the Settlement.

11. A hearing, for purposes of determining whether the Settlement should be finally approved, shall be held before this Court on **Friday, August 1, 2025 at 9:30 a.m.** at the U.S. District Court for the Western District of Kentucky, Gene Snyder United States Courthouse, 601 West Broadway, Louisville, KY 40202. At the hearing, the Court will hear arguments concerning whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court. The Court will consider any objections that may be filed, as well as Class Counsel's request for an award of attorneys' fees and costs and for a Service Award to be made to Plaintiff.

12. Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order, Plaintiff and all Class Members who do not timely submit valid Requests for Exclusion, and anyone acting on any of their behalf, shall be barred and enjoined from: (a) further litigation in this case; and (b) filing or taking any action directly or indirectly to commence, prosecute, pursue, or participate on an individual or class or collective action basis of any action, claim, or proceeding against any Defendant in any forum in which any

of the claims released in the Settlement Agreement are asserted, or which in any way would prevent any such claims from being extinguished.

13. Upon the Effective Date, the Litigation shall be dismissed with prejudice and all Released Claims of Named Plaintiffs and the Settlement Class shall be released, and the Named Plaintiffs and each Settlement Class Member shall be deemed to have, and by operation of the Final Order and Judgment shall have, released, waived, and forever discharged the Releasees from all Released Claims.  As of the Effective Date, Named Plaintiffs and the Settlement Class Members, and anyone claiming through or on behalf of any of them, will be forever barred and enjoined from commencing or prosecuting any action or other proceeding in any court of law or equity, arbitration All Class Members who do not opt out of the Settlement by submitting a timely Request for Exclusion shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Settlement Class or Class Member.

14. To receive a reimbursement for eligible out-of-pocket expenses under the Settlement, Class Members must submit a Claim Form to the Claims Administrator no later than the Claims Deadline as specified in the Settlement Agreement.  Any Class Member who does not submit a timely and materially complete and executed Claim Form may not receive a reimbursement. Notwithstanding the foregoing, Class Counsel shall have the discretion, but not the obligation, to accept late-submitted claims for processing by the Claims Administrator so long as distribution of reimbursements is not materially delayed.

15. Any Settlement Class Member who intends to object to the Settlement Agreement and/or to Class Counsel's request for an award of attorneys' fees, litigation costs and expenses, or Service Awards, must do so by no later than 60 days after the Notice Date, subject to the terms and conditions set forth in the Settlement Agreement.  The written objection must be postmarked to the Claims Administrator—or, for objectors represented by counsel, the electronic filing with the Court must be filed—on or before this date.

16. Subject to the approval of the Court, any timely and properly objecting Settlement Class Member may appear, in person or by counsel, at the Final Approval Hearing to explain why the proposed Settlement should not be approved as fair, reasonable, and adequate, or to object to any motion for attorneys' fees and expenses or class representative Service Awards. Any Settlement Class Member who has not timely and properly filed an objection in accordance with the deadlines and requirements set forth herein shall be deemed to have waived and relinquished his/her/its right to object to any aspect of the Settlement, or any adjudication or review of the Settlement, by appeal or otherwise.

17. To appear at the Final Approval Hearing, any Settlement Class Member must, no later than the objection deadline, file with the Clerk of the Court, and serve upon all counsel designated in the Class Notice, a notice of intention to appear at the Final Approval Hearing. The notice of intention to appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member (or the Settlement Class Member's counsel) intends to present to the Court in connection with the Final Approval Hearing. Any Settlement Class Member who does not provide a notice of intention to appear in accordance with the deadline and other specifications set forth in the Settlement Agreement and the Class Notice, or who has not filed an objection in accordance with the deadline and other requirements set forth in the Settlement Agreement and the Class Notice, shall be deemed to have waived and relinquished any right to appear, in person or by counsel, at the Final Approval Hearing.

18. Any Settlement Class Member who wishes to be excluded from the Settlement Class must timely submit a request for exclusion to the Settlement Administrator at the address specified in the Class Notice, in compliance with the terms of the Settlement Agreement.

19. In the event that the Effective Date (as provided for in the Settlement Agreement) does not occur, the Settlement and the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

20. The Parties must carry out the Settlement according to the terms of the Settlement Agreement.

21. The Court imposes the following schedule:

| Event | Date |
|---|---|
| Notice Date | May 3, 2025 |
| Plaintiffs' Motion for Fees and Expenses Award, and Service Awards | No later than June 11, 2025 |
| Objection Deadline | July 2, 2025 |
| Opt-Out Deadline | July 2, 2025 |
| Plaintiffs' Motion for Final Approval | No later than July 16, 2025 |
| Settlement Administrator Declaration re: Class Notice | No later than July 18, 2025 |
| Claims Period / Deadline | August 1, 2025 |
| Final Approval Hearing | August 1, 2025 |

Benjamin Beaton, District Judge
United States District Court

February 17, 2025