UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CATHERINE DUFFY, ET AL.                                                        PLAINTIFFS

v.                                                                No. 3:24-cv-388-BJB

MAZDA MOTOR OF AMERICA, INC.                                              DEFENDANT

\* \* \* \* \*

OPINION & ORDER APPROVING SETTLEMENT AND ATTORNEY FEES

This provisionally certified class action involves alleged defects in Mazda's "infotainment" system—the center-console interface that displays a vehicle's audio system, cell phone connectivity, and rear backup camera. The allegations concern some 1.7 million Mazda vehicles manufactured between 2014 and 2023. Complaint (DN 1) ¶ 1; Order Preliminarily Approving Settlement Class (DN 39) at 6. According to the Plaintiffs, the system "suffers from a range of technical glitches that cause it to continuously reboot, freeze, become non-responsive, get stuck in a never-ending bootloop process, or otherwise malfunction." Complaint ¶ 5.

After more than two years of litigation and negotiation, the Plaintiffs reached a classwide settlement agreement with Mazda and proposed certifying a settlement class to resolve their claims. DN 18. Mazda did not oppose that motion. In February 2025, the Court provisionally certified the settlement class and preliminarily approved the proposed settlement, which permitted class counsel to notify class members. DN 39. That notice process continued through the summer, and the Plaintiffs moved for final approval of the settlement in July. DN 59. The Court then held a final fairness hearing to evaluate the proposed settlement. *See* FED. R. CIV. P. 23(e)(2).

Courts in the Sixth Circuit evaluate proposed class-action settlements under two overlapping sets of factors—one that comes from Rule 23(e) itself, the other from caselaw that developed before the Federal Rules provided its own list of "core concerns" for evaluating classwide settlements. *See Wayside Church v. Van Buren County*, No. 24-1598, 2025 WL 2829601, at *10 (6th Cir. Oct. 6, 2025) (discussing how 2018 amendment and Advisory Committee Note affected circuit practice under Rule 23(e)(2)). Under Rule 23(e)(2), courts consider whether the class representatives and counsel adequately represented the class, negotiated at arm's length, and provided "adequate" and "equitabl[e]" classwide relief. *See In re East Palestine Train Derailment*, 158 F.4th 704, 713 (6th Cir. 2025) (applying FED. R. CIV. P. 23(e)(2)). Prior Sixth Circuit caselaw, not yet overruled or even displaced, adds seven more

1

considerations: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. *Does 1–2 v. Déjà Vu Services, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019). The "burden of proving the fairness of the settlement is on the [settlement's] proponents." *In re Dry Max Pampers Litigation*, 724 F.3d 713, 719 (6th Cir. 2013) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:42 (4th ed.)).

The preliminary-approval order explained why the proposed settlement here likely satisfies both sets of criteria. Preliminary Approval Order at 3–5. Nothing that has followed that order casts doubt on the Court's preliminary conclusions. *See id.* at 8–11 (granting preliminary approval and notice of the classwide settlement). But the Court's previous order could not address the sixth *Déjà Vu* factor—the reaction of absent class members—because those members had not yet had the chance to object. After the claims administrator distributed just under three million class notices (more than 96 percent of which reached their intended recipient), 31 class members opted out and four objected. Motion for Final Approval (DN 59-1) at 7, 10. That infinitesimally low rate of class discontent alone suggests that this factor ought not encumber approval. *See Déjà Vu*, 925 F.3d at 899; *see also Dick v. Sprint Communications Co. L.P.*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("A certain number of objections are to be expected in a class action. If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citation omitted).[1] But the Court must also consider whether the objections establish that the settlement is not "fair, reasonable, and adequate." *See* FED. R. CIV. P. 23(e)(2).

The first objection comes from Lori O'Leary, who argues that the settlement should have covered out-of-pocket expenses she incurred in May 2025 (after the settlement's February 2025 cutoff date). *See* DN 59-2, Ex. K. Second, Patricia and Charles Jones relay that, had they known a settlement would fully reimburse expenses incurred before February 2025, they would have had their vehicle repaired.

---

[1] Class member Francis Farina purported to opt out on behalf of himself and "approximately 86,000 other 2021 Mazda vehicle owners" whose vehicles, he says, do not have the hardware at issue in this litigation. *See* Notice of Francis J. Farina's Opt Out (DN 52) at 1. Although he is welcome to opt himself out of the settlement, neither the Federal Rules nor any law that Farina has cited provide for this sort of mass representative opt out. And for good reason: that would effectively create an uncertified (and unprotected) breakaway class within a class. Both the inefficiency and the legal exposure of the maneuver would disserve the purposes of class litigation. *Cf. Fox v. Saginaw County*, 35 F.4th 1042, 1050 (6th Cir. 2022) ("[C]lass members should decide for themselves whether they want to opt out."); *see also In re TikTok, Inc., Consumer Privacy Litigation*, 565 F. Supp. 3d 1076, 1092–93 (N.D. Ill. 2021) (collecting decisions rejecting mass opt-outs); 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 9:49 (6th ed., Dec. 2025). The Court grants Farina's request to opt himself out of the class, but denies his request to pull others' claims as well.

2

But now they get only an unfair warranty. DN 51 at 1–2. The third and fourth objections are similar. Lea Johnson notes that the settlement's limited warranty extension does not cover issues with the SD card, display, and rear-view cameras. DN 59-2, Ex. K. Mazda has acknowledged these issues, Johnson says, so they should be covered in the settlement. *Id.* Finally, Karl Lindemann objects (at considerable length) that the warranty extension does not cover all hardware parts that affect the infotainment system, including the one that he replaced on his own dime before this litigation started. *Id.* (also complaining about mail-in objections, *see* Preliminary Approval Order at 7).

All four objections address substantive rather than procedural concerns. These class members rationally wish the settlement's terms were broader and more generous. That type of objection, however, must be weighed against the relief that these and the overwhelming remainder of class members *do* obtain. "It is well settled … that objections based purely upon individual claims of loss do not warrant disapproval of the proposed settlement." *Thacker v. Chesapeake Appalachia*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) (quotation marks omitted). These four objectors must overcome nearly three million notified parties who did not object. *See Wade v. Kroger*, No. 3:01-cv-699, 2008 WL 4999171, at *6 (W.D. Ky. Nov. 20, 2008) (when the "overwhelming majority" of class members raise no objection to a settlement's fairness, dissenting votes from a few do not render a settlement unreasonable).

Despite those objectors' concerns, judges must be "careful not to substitute their own judgment for that of the settling parties." *See* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:46 (6th ed., Dec. 2025). And settlements often encompass and balance both prospective relief (here, the extended warranty) and retrospective relief (here, the reimbursement), in ways that might differ—or leave one or the other camp (or both) less than fully satisfied. *See, e.g.*, *Burch v. Whirlpool Corporation*, No. 1:17-cv-18, 2019 WL 13234786, at *2–3 (W.D. Mich. Oct. 16, 2019) (approving settlement with differing terms based on when defect first appeared). That O'Leary and the Smiths fall on the prospective side of the line does not render the settlement unfair.

As to Johnson and Lindemann, that a settlement might have been more expansive does not necessarily render it unfair. *See In re Polyurethane Foam Antitrust Litigation*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("The possibility that the settlement could have been better does not mean the settlement presented was not fair, reasonable or adequate.") (quotation marks omitted). And here, Lindemann's objection simply seeks a different repair to address a similar problem. Meanwhile, Johnson's objection speaks to a similar disparity between retrospective and prospective relief as that noted by O'Leary and Smith. The overwhelming majority of class members seated alongside the objectors have expressed no dissatisfaction with the solutions that the settlement offers. So this Court has limited cause to intervene at this late hour. To the extent any of the four objectors thought they might have fared better outside the class action, they had the chance to opt out and seek greater relief on their own. *See Cobell v. Salazar*, 679 F.3d 909, 920 (D.C. Cir. 2012) ("[T]hat [a] class member, like any other class member who is allegedly

under-compensated by the distribution formula, could have opted out of the … [c]lass," but didn't, "negates any inference that those who did not [opt out] considered the settlement unfair."). The Court therefore overrules the four objections.[2]

Otherwise, the Court's main concern at the preliminary-approval stage was whether the proposed service awards—$4,000 to Plaintiff Catherine Duffy, and $2,500 to Plaintiffs Matthew Edlin, Lawrence Mulcahy, and Paula Hall—amounted to inequitable treatment of the other class members that would offend Rule 23(e)(2). The Sixth Circuit has recognized that, at least in class actions, service awards can be "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).

At the hearing, counsel explained that Duffy (who attended the hearing) had provided her vehicle for inspection, remained actively involved in litigation through document review, regularly advised counsel, and allowed court filings to disclose her personal information. *See* Hearing Transcript (DN 80) at 30:18–22; *see also* Motion for Attorney Fees and Service Awards (DN 46-1) at 20. And the other named plaintiffs participated in similar ways, albeit to a lesser degree (as counsels' declarations attest). *See* Declarations (DN 46-2, 46-3, 46-4, 46-5). No class members objected to the proposed awards.

Those awards appear appropriate here. Absent these named plaintiffs' efforts here, especially in the litigation's early stages, the case quite likely would not have gone forward to reach a settlement benefitting the whole class. This differs from service awards that misalign the incentives of class representatives and recovery of the class. *See In re Dry Max Pampers Litigation*, 724 F.3d at 722; *see also Vassalle v. Midland Funding*, 708 F.3d 747, 755 (6th Cir. 2013) (directing courts to consider "whether the settlement gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members") (quotation marks omitted). Indeed, as counsel acknowledged at the hearing, some class members could receive as much as the service awards to reimburse repairs to their vehicles. Hearing Transcript at 36:1–18. In other words, the awards don't suggest the class representatives (or counsel) sold out the class members. The Court thus sees no reason to reject these unopposed service awards.

---

[2] Separately, and after the deadline for objections had passed, Kurt Panzer moved for a "delay [in] any final decision regarding the proposed Settlement." DN 58. He argued the settlement should have addressed a defect he cleverly labels "ghost touch," which appears to involve the infotainment display changing radio stations without prompting. Panzer apparently attempted to address his concern with class counsel and the claims administrator after receiving notice of the settlement. But he did not opt out before the deadline. *See* Reply (DN 82) at 2. And he disclaims any interest in having his motion construed as an objection (which would have been untimely in any case). *Id.* Panzer's substantive concern is therefore irrelevant to final approval.

Finally, the Plaintiffs move for attorney fees and expenses totaling $1.9 million, which includes $59,500.31 in litigation costs and expenses. DN 46 at 2. Courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Consistent with regular practice, the Court refers the motion for attorney fees to Magistrate Judge Lindsay to address in the first instance.

The Court therefore grants the motion for final approval of the class action settlement (DN 59), grants the motion for service awards (DN 46), and refers the motion for attorney fees to Magistrate Judge Lindsay for a report and recommendation (DN 46). The Court denies all other pending motions (including Panzer's late-filed notice and the unfiled objections attached to the motion to approve, *see* DN 59-2) as moot. This is a final order. *See* FED. R. CIV. P. 58.